ASH

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Samvel Manukian, | No. CV-26-00134-PHX-JJT (MTM) |
| Petitioner, | |
| v. | **ORDER** |
| Pamela Bondi, et al.,[1] | |
| Respondents. | |

Petitioner filed this action on January 9, 2026, under 28 U.S.C. § 2241 challenging his immigration detention. (Doc. 1.) On January 12, 2026, the Court issued an Order to Show Cause why the § 2241 Petition should not be granted. (Doc. 4.) Upon review of the briefing and considering the length of Petitioner's detention—18 months—the Court will grant the Petition in part and order that Petitioner receive a bond redetermination hearing within seven days.

## I.   BACKGROUND.

Petitioner is a citizen of the Russian Federation. (Doc. 1 at 4.) On December 24, 2024, Petitioner, who lacked proper entry documents, entered the United States. (*Id.* at 5.) Petitioner indicated an intent to seek asylum in the United States. (*Id.* at 4.) Petitioner was immediately taken into U.S. Department of Homeland Security ("DHS") custody. (*Id.*) Petitioner was charged as inadmissible under Immigration and Nationality Act ("INA") §§

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), Acting Attorney General Todd Blanche is substituted for Pamela Bondi, and Secretary of Homeland Security Markwayne Mullin is substituted for Kristi Noem.

212(a)(6)(A)(i) and 212(a)(7)(A)(i)(I)—codified at 8 U.S.C. §§ 1182(a)(6)(A)(i)[2] and (a)(7)(A)(i)(I),[3] respectively. (Doc. 1-1 at 2, 14.) Petitioner has remained in DHS custody since December 24, 2024. (*Id.*)

Petitioner was placed in removal proceedings pursuant to 8 U.S.C. § 1229a. *See* (Doc.1-1 at 19.) On July 28, 2025, Petitioner's application for asylum, withholding of removal, and protection under the Convention Against Torture ("CAT") were denied by an Immigration Judge ("IJ"). (*Id.*) Petitioner appealed the adverse decision, which was upheld by the Board of Immigration Appeals ("BIA") on March 12, 2026. (Doc. 10 at 5.) That decision was subsequently appealed to the Ninth Circuit Court of Appeals, where it remains pending. (Doc. 10 at 11.)

## II.   28 U.S.C. § 2241 WRIT OF HABEAS CORPUS.

The district court is empowered to issue a writ of habeas corpus where an individual is held "in custody in violation of the Constitution or laws or treaties of the United States[.]" 28 U.S.C. § 2241(c)(3). The language of § 2241 and "the common-law history of the writ" makes clear "that the essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and that the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475 484 (1973) (noting that the writ of habeas corpus "was early recognized by [the Supreme] Court as a 'great constitutional privilege'") (quoting *Ex parte Bollman*, 8 U.S. (4 Cranch) 75, 95 (1807)); *cf. In re Kaine*, 55 U.S. (14 How.) 103 (1852) (applying the writ of habeas corpus in the immigration context). The Supreme Court has made clear that § 2241 applies to noncitizens[4] challenging their immigration detention. *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001).

---

[2] This provision states that a noncitizen "present in the United States without being admitted or paroled, or who arrives in the United States at any time or place other than as designated by the Attorney General, is inadmissible." 8 U.S.C. §1182(a)(6)(A)(i).

[3] This provision states that an immigrant "who is not in possession of a valid unexpired immigrant visa, reentry permit, border crossing identification card, or other valid entry document required by this chapter, and a valid unexpired passport, or other suitable travel document, or document of identity and nationality if such document is required under the regulations issued by the Attorney General under section 1181(a) of this title . . . is inadmissible." 8 U.S.C. §1182(a)(7)(A)(i)(I).

[4] Undersigned shall use the term 'noncitizen' unless a quoted statute or court

Because Petitioner only challenges his prolonged civil detention, the Court has jurisdiction to address the instant Petition. *See Lopez-Marroquin v. Barr*, 955 F.3d 759, 759 (9th Cir. 2020) ("[D]istrict courts retain jurisdiction under 28 U.S.C. § 2241 to consider habeas challenges to immigration detention that are sufficiently independent of the merits of the removal order[.]").

**III.    DISCUSSION**.

In his Petition, Petitioner asserts (1) that his continued detention violates the Administrative Procedures Act ("APA"); and (2) that his continued detention violates due process under the Fifth Amendment. (Doc. 1 at 19–22.) Respondents have filed a Response. (Doc. 6.) In their Response, Respondents solely argue that Petitioner is not entitled to release under the Supreme Court's decision in *Zadvydas v. Davis*, 533 U.S. 678 (2001). (*Id.*)

Because the Court finds that Petitioner's continued detention absent a bond hearing violates his procedural due process rights, the Court need not reach Petitioner's APA claim.

**A. Statutory Basis for Petitioner's Detention**.

"A noncitizen's place within this statutory scheme can affect whether his detention is mandatory or discretionary, as well as the kind of review process available to him if he wishes to contest the necessity of his detention." *Avilez v. Garland*, 69 F.4th 525, 529 (9th Cir. 2023) (cleaned up). Given that Petitioner was placed in 8 U.S.C. § 1229a removal proceedings, Petitioner's detention falls under 8 U.S.C. § 1225(b)(2). Furthermore, considering that the BIA's decision on removal was appealed to the Ninth Circuit Court of Appeals, the § 1231(a)(2) mandatory detention period has not yet begun to run.  8 U.S.C. §§ 1231(a)(1)(B), (a)(2).  As such, *Zadvydas* has no relevance to Petitioner's present detention.

**B. Due Process**.

The Court thus turns to Petitioner's due process claim. The Court's due process analysis is separated into two steps: "[F]irst[, the Court] ask[s] whether there exists a liberty

decision uses the term 'alien.'  *See Avilez v. Garland*, 69 F.4th 525, 527 n.1 (9th Cir. 2023).

or property interest of which a person has been deprived, and if so[, the Court] ask[s] whether the procedures followed by the [government] were constitutionally sufficient." *Swarthout v. Cooke*, 562 U.S. 216, 219 (2011).

### 1. *Liberty Interest*.

"A liberty interest may arise from the Constitution itself[5] . . . or it may arise from an expectation or interest created by state laws or policies." *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005) (citations omitted). If a liberty interest is found, the Court then determines whether the administrative procedures are sufficient considering the "particular situation."[6] *Mathews v. Eldridge*, 424 U.S. 319, 334 (1976) (quoting *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972)).

In the instant action, the Court does not find any obstacles precluding Petitioner from forming and maintaining a liberty interest in release from DHS custody or, alternatively, a bond hearing. Mainly, the Court declines to find that the so-called 'entry fiction doctrine' has any bearing upon Petitioner's as-applied challenge to his current immigration detention.

The entry fiction doctrine is based upon the "distinction between those aliens who have come to our shores seeking admission, such as petitioner, and those who are within the United States after an entry, irrespective of its legality." *Leng May Ma v. Barber*, 357 U.S. 185, 187 (1958). The Supreme Court has noted that the latter category of noncitizens have "additional rights and privileges not extended to those in the former category who are merely 'on the threshold of initial entry.'" *Id.* (quoting *Shaughnessy v. U.S. ex rel. Mezei*, 345 U.S. 206, 212 (1953)); *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 139 (2020) ("Whatever the procedure authorized by Congress is, it is due process as far as an

---

[5] "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects." *Zadvydas*, 533 U.S. at 690.

[6] The Court notes that due process is a flexible concept. This, however, "does not mean that judges are at large to apply it to any and all relationships. Its flexibility is in its scope once it has been determined that some process is due; it is a recognition that not all situations calling for procedural safeguards call for the same kind of procedure." *Morrissey*, 408 U.S. at 481.

alien denied entry is concerned") (quoting *U.S. ex rel. Knauff v. Shaughnessy*, 338 U.S. 537, 544 (1950)). Those noncitizens who are on the "threshold of initial entry" are not considered "to have 'effected an entry[.]'" *Thuraissigiam*, 591 U.S. at 140 (quoting *Zadvydas*, 533 U.S. at 693). Put differently, "[w]hen an alien arrives at a port of entry— for example, an international airport—the alien is on U.S. soil, but the alien is not considered to have entered the country[.]" *Thuraissigiam*, 591 U.S. at 139. Therefore, while a citizen may be physically present within the country, they were "still in theory of law at the boundary line and had gained no foothold in the United States[.]" *Zadvydas*, 533 U.S. at 693 (quoting *Kaplan v. Tod*, 267 U.S. 228, 257–58 (1925)).

Numerous courts in this district and its sister districts have found that the entry fiction doctrine is of limited application. Those courts have found that the entry fiction doctrine solely applies to the procedural rights of noncitizens regarding *admission*, not *every* procedure occurring in the immigration context—*i.e.*, the entry fiction doctrine is inapplicable to challenges of a petitioner's length of detention. *See D.V.D. v. U.S. Dep't of Homeland Sec.*, No. CV 25-10676-BEM, 2026 WL 521557, at *28–31 (D. Mass. Feb. 25, 2026)[7]; *see also Padilla v. U.S. Immigr. & Customs Enf't*, 704 F. Supp. 3d 1163, 1170–72 (W.D. Wash. 2023) (noting that when a petitioner "do[es] not challenge the admission process in any way or assert a right to remain in the United States," the entry fiction doctrine is inapplicable).

For example, the district court in *D.V.D.* noted that in cases that provide an exception to the otherwise "geographic" scope of the Due Process Clause, "the due process rights impacted are only those 'regarding admission.'" *Id.* at *30 (quoting *Thuraissigiam*, 591 U.S. at 140). "This distinction arises near the very inception of the entry-fiction case law." *Id.* In *Wong Wing v. United States*, 163 U.S. 228 (1896), the Supreme Court "contrasted the case of an immigrant who could not challenge his immigration officer's

---

[7] Although *D.V.D.* is an out-of-circuit decision that is currently stayed by the First Circuit, the Court is nonetheless persuaded by the analysis contained within *D.V.D.* Furthermore, undersigned does not stand alone within the District of Arizona in relying upon *D.V.D. Guevara Serrano v. Bondi*, No. CV-26-00110-PHX-DJH, at *3–4 (D. Ariz. Mar. 9, 2026).

'exclusive authority to determine whether a particular alien seeking admission into this country' was so entitled, with another who could challenge, on due process grounds, the imposition of an immigration-related term of hard labor." *Id.* (quoting *Wong Wing*, 163 U.S. at 232–33, 235–38). The district court noted that although *Wong Wing* "presented the particularly egregious circumstance of an 'infamous punishment,'" the Supreme Court expressed its holding in terms of the broader protections afforded by the Due Process Clause:

> Applying this reasoning to the fifth and sixth amendments, it must be concluded that all persons within the territory of the United States are entitled to the protection guarant[e]ed by those amendments, and that even aliens shall not be held to answer for a capital or other infamous crime, unless on a presentment or indictment of a grand jury, nor be deprived of life, liberty, or property without due process of law.

*Id.* (quoting *Wong Wing*, 158 U.S. at 238). The court observed that "[i]t makes sense to distinguish between 'rights regarding admission' and other interests that might be protected by the Due Process Clause." *Id.* (citing *Thuraissigiam*, 591 U.S. at 140).

"The Government's countervailing interest, in the entry-fiction context, is its sovereign authority to 'admit [noncitizens] only in such cases . . . as it may see fit.'" *Id.* (citation omitted). "Where that sovereign prerogative is not implicated, however, the legal fiction loses its justification." *Id.* (citing *Zadvydas*, 533 U.S. at 699). "Unsurprisingly then, more than a century of Supreme Court case law confirms that the proper application of an entry fiction, where otherwise appropriate, is to preserve the Government's authority over the determination of a noncitizen's admissibility." *Id.* (emphasis in original). Accordingly, where an immigration detainee challenges neither his order of removal nor any of the processes that produced those orders, his claims "do not implicate, nor even "relate[ ] to," the issue of [his] admissibility." *See id.* at *31 (citing *Johnson v. Guzman Chavez*, 594 U.S. 523, 536 (2021)). Petitioner is a "'person[]' within the United States," and the Fifth Amendment therefore "imposes constraints" on any process that deprives him of his liberty interests. *Id.*

In short, neither bond hearings nor release from detention equates admissions. *See Rincon v. Hyde*, 810 F. Supp. 3d 101, 107 (D. Mass. 2025) (noting that, if a petitioner were released following a bond hearing, they "will be subject to the same removal proceedings as before, with no new right to remain"). "Thus, Petitioner does not purport to invoke any 'rights regarding admission.'" *Id.* at 110 (quoting *Thuraissigiam*, 591 U.S. at 140); *D.V.D.*, 2026 WL 521557, at *30 ("It makes sense to distinguish between rights regarding admission and other interests that might be protected by the Due Process Clause.").

### 2. *Due Process Rights Regarding Petitioner's Prolonged Detention*.

In arguing that his detention has become prolonged, Petitioner relies upon *Zadvydas v. Davis*, 533 U.S. 678 (2001). (Doc. 1 at 20–22.) Respondents assert that the *Zadvydas* analysis is inapplicable to Petitioner. (Doc. 6 at 1–2.) The Court agrees with Respondents on this matter but does not find that Petitioner's application of the wrong standard dooms his Petition.[8]

Courts in this circuit and beyond have grappled over what test should be used to determine whether procedural due process requires relief for a noncitizen held pursuant to § 1225(b). *See Doe v. Andrews*, 1:25-cv-00333-JLT-HBK, at *15–17 (E.D. Cal. Mar. 23, 2026) (applying the 3-factor *Lopez* test); *see also Galkin v. Scott*, No. 2:26-cv-00530-TLF, 2026 U.S. Dist. LEXIS 46838, at *7 (W.D. Wash. Mar. 6, 2026) (applying the 6-part *Banda* test) (*Banda v. McAleenan*, 385 F. Supp. 3d 1099, 1118 (W.D. Wash. 2019)); *Leonteva v. Noem*, No. 4:26-cv-00043-SEB-KMB, 2026 U.S. Dist. LEXIS 52217, at *22 (S.D. Ind. Mar. 13, 2026) (applying the same 6-factor test, but calling it the *Jamal A* test) (*citing Jamal A. v. Whitaker*, 358 F. Supp. 3d 853, 858–59 (D. Minn. 2019)); *L.S. v. Warden, Otay Mesa Det. Ctr.*, No. 25-cv-3598-LL-BJW, 2026 U.S. Dist. LEXIS 10299, at *11–15 (S.D. Cal. Jan. 20, 2026) (applying the 3-part *Mathews v. Eldridge* test) (citing *Mathews*, 424 U.S. at 335).

---

[8] It is not Petitioner's burden to guess at the basis for his detention. That burden lies with the government to both identify and support its authority for depriving a person of their liberty. That Petitioner misidentified the authority for his detention only alters the analysis of his claim; it does not negate the claim itself.

Out of the abovementioned tests, the Court finds the *Banda* test the most applicable to the situation at hand. Under the *Banda* test, the Court considers the following factors:

> (1) the total length of detention to date; (2) the likely duration of future detention; (3) the conditions of detention; (4) delays in the removal proceedings caused by the detainee; (5) delays in the removal proceedings caused by the government; and (6) the likelihood that the removal proceedings will result in a final order of removal.

*Banda*, 385 F. Supp. 3d at 1118.

The Court finds the *Banda* test more suitable than the *Mathews*[9] and *Lopez*[10] tests. Regarding the *Mathews* test, the Court concurs with other district courts that have found that "while the *Mathews* factors may be well-suited to determining whether due process requires a second bond hearing, they are not particularly dispositive of whether prolonged mandatory detention has become unreasonable in a particular case." *Lopez*, 631 F. Supp. 3d at 879. Put differently, the *Mathews* test is apt where the question is whether an administrative procedure provided is "constitutionally sufficient," but "[i]t does not resolve the more fundamental issue of whether any procedure—such as a bond hearing—must be provided."[11] *Banda*, 385 F. Supp. 3d at 1106–07.

---

[9] Under the *Mathews* test, the Court considers:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Mathews*, 424 U.S. at 335.

[10] Under the *Lopez* test, "the Court will look to the total length of detention to date, the likely duration of future detention, and the delays in the removal proceedings caused by the petitioner and the government." *Lopez*, 631 F. Supp. 3d at 879. The Court notes that this test "concern[s] due process challenge[s] to mandatory detention under § 1226(c), [and] are, in essence, a truncated version of the factors enumerated in *Banda*[.]" *Andrews*, 1:25-cv-00333-JLT-HBK, at *14. Because the six-factor *Banda* test is more detailed than *Lopez* and is better suited for noncitizens held pursuant to § 1225(b), the Court accordingly elects to apply it.

[11] In any event, the outcome applying *Mathews* and *Banda* would be the same— *i.e.*, Petitioner would be entitled to an individual bond hearing. Applying the first *Mathews* element, undersigned finds that Petitioner has a strong private interest in his liberty from prolonged civil detention. *See Hernandez v. Sessions*, 872 F.3d 976, 993 (9th Cir. 2017) ("As to the first factor, the private interest at issue here is 'fundamental': freedom from

      *i.*      *Length of Detention.*

The first *Banda* factor is the length of detention, "which is the most important factor." *Banda*, 385 F. Supp. 3d at 1118. "It is important to bear in mind the context: The detention that is being examined here is the detention of a human being who has never been found to pose a danger to the community or to be likely to flee if released." *Id.* (quoting *Jamal A.*, 358 F. Supp. 3d at 859).

Petitioner has been held in DHS custody for approximately 18 months. Under the first *Banda* factor, where a petitioner's current detention exceeds a six-month threshold their "detentions become less and less reasonable." *Haidari v. Immigr. & Customs Enf't Field Off. Dir.*, No. 2:26-cv-00039-TL, 2026 U.S. Dist. LEXIS 56882, at *8 (W.D. Wash. Mar. 18, 2026) (quoting *L.B.O.M. v. Hermosillo*, No. 2:25-cv-02695-GJL, 2026 U.S. Dist. LEXIS 21291, at *8 (W.D. Wash. Feb. 2, 2026).

Petitioner's 18-month detention is well beyond the six-month threshold, and well beyond the length of confinement other courts have found to be prolonged. *See, e.g.*, *Liang*

---

imprisonment is at the 'core of the liberty protected by the Due Process Clause.'") (quoting *Foucha*, 504 U.S. at 80).

Turning to the second element, considering the prolonged nature of Petitioner's detention, the Court finds a large risk of erroneous deprivation in the absence of an individualized bond hearing. *See Rodriguez v. Robbins*, 715 F.3d 1127, 1144 (9th Cir. 2013) (noting that the discretionary parole system envisioned under the Immigration and Naturalization Act is insufficient "to overcome the constitutional concerns raised by prolonged mandatory detention"). Hence, an individualized bond hearing would greatly mitigate the risk of a continued constitutional violation.

Finally, regarding the third *Mathews* factor, the government interest in detaining Petitioner without an individualized bond hearing is low. First, "[p]roviding petitioner with a bond hearing would not impede respondents' interest in effecting removal or protecting the public, as the purpose of the bond hearing is to determine whether petitioner is a danger or flight risk." *Jensen v. Garland*, No. 5:21-CV-01195-CAS (AFM), 2023 WL 3246522, at *6 (C.D. Cal. May 3, 2023). Second, the fiscal burden of providing an individualized bond hearing is low. *See Abduraimov v. Andrews*, No. 1:25-CV-00843-EPG-HC, 2025 WL 2912307, at *7 (E.D. Cal. Oct. 14, 2025) ("Courts generally have found that the cost of providing a bond hearing is relatively minimal, and there is nothing in the record before this Court demonstrating that providing Petitioner with a bond hearing would be fiscally or administratively burdensome."); *cf. Hernandez v. Sessions*, 872 F.3d 976, 996 (9th Cir. 2017) (noting that "[t]he costs to the public of immigration detention are 'staggering': $158 each day per detainee, amounting to a total daily cost of $6.5 million. Supervised release programs cost much less by comparison: between 17 cents and 17 dollars each day per person"). Therefore, the third factor minimally favors the government. Accordingly, applying the *Mathews* test to Petitioner's 18-month detention, undersigned concludes that due process requires he be provided with an individualized bond hearing.

*Ding v. Noem*, No. 1:26-cv-01217-DJC-SCR, 2026 U.S. Dist. LEXIS 58212, at *3–4 (E.D. Cal. Mar. 19, 2026) (noting that an eight-month detention is sufficiently prolonged to warrant granting relief); *Amado v. U.S. Dep't of Just.*, No. 25-cv-2687-LL (DDL), 2025 U.S. Dist. LEXIS 217453, at *14 (S.D. Cal. Nov. 4, 2025) ("To date, [p]etitioner has been in detention for approximately thirteen months. Courts have found detention over seven months without a bond hearing weighs toward a finding that it is unreasonable."); *Kadir v. Larose*, No. 25cv1045-LL-MMP, 2025 U.S. Dist. LEXIS 203614, at *13 (S.D. Cal. Oct. 15, 2025) (noting that 13 months without a bond hearing is prolonged); *cf. Banda*, 385 F. Supp. 3d at 1118 ("Petitioner has been in detention for approximately 17 months, which is a very long time."). In light of these decisions, and based upon the facts of the instant action, the Court finds the length of Petitioner's detention strongly favors granting relief.

ii.      *Likely Duration of Future Detention*.

The second factor requires the Court to "consider[] how long the detention is likely to continue absent judicial intervention; in other words, the anticipated duration of all removal proceedings—including administrative and judicial appeals." *Banda*, 385 F. Supp. 3d at 1119 (citation omitted). "When the alien's removal proceedings are unlikely to end soon, this suggests that continued detention without a bond hearing is unreasonable." *Akmal v. Warden of Cal. City Det.*, No. 1:25-CV-01921-DC-DMC-HC, 2026 WL 657606, at *7 (E.D. Cal. Mar. 9, 2026) (quoting *German Santos v. Warden Pike Cnty. Corr. Facility*, 965 F.3d 203, 211 (3d Cir. 2020)).

While the length of future detention is uncertain considering Petitioner's appeal to the Ninth Circuit Court of Appeals, the Court finds that the likely duration of future detention is sufficiently lengthy for this factor to favor Petitioner. *See Chekhovskii v. Scott*, No. 2:25-CV-02550-TLF, 2026 WL 353265, at *4 (W.D. Wash. Feb. 9, 2026) (finding the second *Banda* factor favored a petitioner who filed an appeal before the Ninth Circuit Court of Appeals because, "based on the current record, it appears likely [that the] petitioner [would] face many more months and potentially years in detention"); *see also Kadir*, 2025 U.S. Dist. LEXIS 203614, at *8 ("Petitioner's future detention can last several more

months or even years during the adjudication of Respondents' appeal to the BIA."); *Liang Ding*, 2026 U.S. Dist. LEXIS 58212, at *4 ("[E]ither party may seek Ninth Circuit review of the [BIA's] decision. Therefore, [p]etitioner faces indefinitely prolonged detention while administrative and potentially judicial appeals of his removal order are decided. Thus, this factor weighs in [p]etitioner's favor.").

> iii.   *Conditions of Detention*.

The third factor requires the Court to consider the conditions of confinement. *Banda*, 385 F. Supp. 3d at 1119. "The more that the conditions under which the [noncitizen] is being held resemble penal confinement, the stronger his argument that he is entitled to a bond hearing." *Id.* (citation omitted). Neither party has addressed Petitioner's conditions of confinement. Hence, the Court finds this factor neutral.

> iv.   *Delays in Removal Proceedings*.

Next, the Court shall analyze the "fourth and fifth [*Banda*] factors—both which consider delays caused by the parties—together." *Maliwat v. Scott*, No. 2:25-CV-00788-TMC, 2025 WL 2256711, at *6 (W.D. Wash. Aug. 7, 2025).

The fourth factor requires the Court to consider the nature and extent of any delays caused by Petitioner. "Courts should be sensitive to the possibility that dilatory tactics by the removable noncitizen may serve not only to put off the final day of deportation, but also to compel a determination that the noncitizen must be released because of the length of his incarceration." *Banda*, 385 F. Supp. 3d at 1119 (cleaned up).

In the instant action, Petitioner has appealed the BIA's decision affirming the IJ's denial of his asylum claim and order of removal. While it is true that Petitioner has delayed his own removal, the Court does not find that this was a dilatory tactic aimed at extending his detention so she could then seek release. Regardless, based on a review of our sister districts' caselaw, the Court is persuaded that a petitioner "should not be effectively punished through indefinite detention for exercising her right to appeal her removal order." *Yuehui Chen v. Noem*, No. 5:26-CV-00397-SSS-DTB, 2026 WL 425694, at *6 (C.D. Cal. Feb. 13, 2026); *Marroquin Ambriz v. Barr*, 420 F. Supp. 3d 953, 964 (N.D. Cal. 2019)

- 11 -

("But the government's suggestion that Petitioner's choice to appeal adverse rulings weighs against any constitutional claim that he may make regarding his detention during the course of the appeal is untenable, and the Court will not require that a petitioner who pursues his available legal remedies must forego any challenge to the reasonableness of his detention in the interim.") (cleaned up); *Barraza v. ICE Field Off. Dir.*, No. C23-1271-BHS-MLP, 2023 WL 9600946, at *6 (W.D. Wash. Dec. 8, 2023), *report and recommendation adopted sub nom. Barraza v. U.S. Immigr. & Customs Enf't Field Off. Dir.*, No. C23-1271 BHS, 2024 WL 518945 (W.D. Wash. Feb. 9, 2024) ("Petitioner is entitled to raise legitimate defenses to removal . . . and such challenges to his removal cannot undermine his claim that detention has become unreasonable.") (citing *Liban M.J. v. Sec. of Dep't of Homeland Sec.*, 367 F. Supp. 3d 959, 965 (D. Minn. 2019)); *Henriquez v. Garland*, No. 5:22-CV-00869-EJD, 2022 WL 2132919, at *5 (N.D. Cal. June 14, 2022) (finding that delays caused by the petitioner to "develop affirmative relief in the face of his removability . . . . does not deprive him of a constitutional right to due process," especially because "the proceedings have been significantly prolonged for reasons beyond his control."). Hence, the fourth factor minimally favors Respondents.

The fifth factor considers the delays in removal caused by the government. *Banda*, 385 F. Supp. 3d at 1120. "[I]f immigration officials have caused delay, it weighs in favor of finding continued detention unreasonable . . . Continued detention will also appear more unreasonable when the delay in proceedings was caused by the immigration court or other non-ICE government officials." *Galkin*, 2026 U.S. Dist. LEXIS 46838, at *11 (quoting *Sajous v. Decker*, No. 18-CV-2447 (AJN), 2018 WL 2357266, at *10–11 (S.D.N.Y. May 23, 2018)). While Petitioner's appeal has caused a delay in his removal, the Court notes that "any 'delay in this case is a product of the BIAs and Ninth Circuit's 'crowded dockets,' which courts typically attribute to the Government—not the Petitioner." *Galkin*, 2026 U.S. Dist. LEXIS 46838, at *11 (quoting *Djelassi v. Ice Field Off. Dir.*, 434 F. Supp. 3d 917, 923 (W.D. Wash. 2020)). Hence, the fifth factor slightly favors Petitioner.

. . . .

- 12 -

###### v.    Likelihood of Removal.

The final *Banda* factor requires the Court to consider "the likelihood that the final proceedings will culminate in a final order of removal." *Banda*, 385 F. Supp. 3d at 1120 (citation omitted). "[W]here a noncitizen has asserted a good faith challenge to removal, 'the categorical nature of the detention will become increasingly unreasonable.'" *Id.* (quoting *Sajous v. Decker*, No. 18-CV-2447 (AJN), 2018 WL 2357266, at *11 (S.D.N.Y. May 23, 2018)). Based on the current record, "the Court lacks sufficient information to comment on the potential merits of [P]etitioner's pending appeal." *Galkin*, 2026 U.S. Dist. LEXIS 46838, at *12. Therefore, the sixth factor is neutral.

###### vi.    Conclusion.

Given three of the *Banda* factors favor Petitioner, one factor favors Respondents, and two factors are neutral, the Court finds that Petitioner's continued detention under § 1225(b)(2) has become unreasonable. Therefore, Petitioner is entitled to relief.

**IV.    Remedy**.

Where a noncitizen's detention under § 1225(b)(2) has become unreasonable, the proper remedy is an individualized bond hearing before a neutral IJ. *See Galkin*, 2026 U.S. Dist. LEXIS 46838, at *12 (finding that "there is no authority" supporting relief in the form of immediate release, but there is authority supporting relief in the form of a bond hearing) (cleaned up); *see also Lopez*, 631 F. Supp. 3d at 882 ("The Court finds, consistent with other post-*Jennings* cases, that the appropriate remedy is a bond hearing before an immigration judge rather than immediate release."); *Kaur v. Lyons*, 2:26-cv-00217-KML, at *1 (D. Ariz. Apr. 9, 2026) (adopting the magistrate judge's recommendations for a 1225(b)(2) petitioner and granting a bond hearing).

At the bond hearing, Respondents bear the burden of proving that Petitioner is a danger or flight risk by clear and convincing evidence. *Singh v. Holder*, 638 F.3d 1196, 1203–05 (9th Cir. 2011). Additionally, "[i]n the event Petitioner is 'determined not to be a danger to the community and not to be so great a flight risk as to require detention without bond,' the [IJ] should consider Petitioner's financial circumstances and alternative

conditions of release." *also Liang Ding*, 2026 U.S. Dist. LEXIS 58212, at *7 (quoting *Hernandez v. Sessions*, 872 F.3d 976, 1000 (9th Cir. 2017)).

Accordingly,

**IT IS ORDERED** that Petitioner's Petition for Writ of Habeas Corpus (Doc. 1) is **GRANTED** as to Petitioner's request for an individualized bond hearing and is **DENIED** as to Petitioner's request for immediate release.

**IT IS FURTHER ORDERED** that a bond hearing shall be held within **SEVEN (7) CALENDAR DAYS** of this order.

1. The bond hearing shall comport with the procedural requirements of *Singh v. Holder*, 638 F.3d 1196 (9th Cir. 2011). There must be a contemporaneous record of the hearing, and the ***GOVERNMENT BEARS THE BURDEN*** of proving by clear and convincing evidence that Petitioner is a flight risk or danger to the community; or

2. In the alternative, the Government shall immediately release Petitioner under appropriate conditions of release.

**IT IS FURTHER ORDERED** that the parties shall file a joint status report with the Court regarding the bond hearing and whether the Petitioner was released within **SEVEN (7) CALENDAR DAYS** of the bond hearing, or, in the alternative, release of Petitioner.

**IT IS FURTHER ORDERED** that all other motions are denied as moot and all scheduled hearings before this Court are vacated. The Clerk of Court is directed to enter judgment in Petitioner's favor and terminate this action.

Dated this 15th day of July, 2026.

Honorable John J. Tuchi
United States District Judge

- 14 -